UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : 3:16-CR-338 |
| v. | : |
| | : (JUDGE MANNION) |
| JOHNNY BIGGS, | : |
| Defendant | : |

**MEMORANDUM**

**I.   BACKGROUND**

On September 9, 2020, defendant Johnny Biggs, an inmate at USP Victorville, Adelanto, California, filed, *pro se*, a Motion for Compassionate Release or Reduction of Sentence under 18 U.S.C. §3582(c)(1)(A), as amended by the First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), and request for immediate transfer to home confinement with his parents in West Virginia, related to his 57-month prison sentence, (*see* June 15, 2017 Judgment, Doc. 32), due to the COVID-19 pandemic and his alleged "organ disease", namely Hepatitis C, and his alleged depressive disorder. (Doc. 35). Biggs alleges that his chronic medical conditions put him at greater risk to suffer more severe consequences if he does contract the virus (which he alleges is present at the prison) and, that they constitute "extraordinary and compelling" reasons for his release from prison. Biggs

also states that he has been in BOP custody for the past 15 years and that his release date is August 19, 2022.

Biggs attached to his motion a copy of his Inmate Request for compassionate release based on COVID-19 and his medical conditions which was received by the prison warden on July 27, 2020. He states that to date the warden has not responded to his Request.

Thus, Biggs appears to allege that he has exhausted his BOP administrative remedies and that his motion is properly before the court since 30 days have expired since his request was received by the warden.

On October 5, 2020, Biggs filed a motion for appointment of counsel with respect to his instant motion. (Doc. 39).

The court directed the government to respond to Biggs' motion. On October 9, 2020, after being granted an extension, the government filed its brief in opposition to the motion and copies of defendant's BOP medical records, which the court allowed to be filed under seal. (Docs. 40 & 42).

Biggs did not file a reply brief and the time within which it was due has expired.

Biggs' motion will be denied on its merits since even though his medical conditions may constitute extraordinary and compelling reasons for his release, the relevant factors under §3553(a) weigh against his release from prison.[1]

---

[1] To the extent Biggs, who is proceeding *pro se*, is liberally construed as also seeking release from prison to home confinement under the

## II. DISCUSSION[2]

The government does not dispute that the exhaustion requirement has been satisfied in this case with respect to Biggs' motion for compassionate release because the warden has not timely responded to his Inmate Request

---

Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, the court does not have authority to grant his request for relief and order the BOP to release him to home confinement. See United States v. McCann, 2020 WL 1901089, *3 (E.D. Ky. April 17, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court has no authority under this provision to order that a prisoner be placed on home confinement.") (citation omitted). See also United States v. Logan, 2020 WL 2559955, *2 (W.D. N.C. May 20, 2020) ("The Defendant alternatively moves the Court to order his release to home confinement due to the ongoing COVID-19 pandemic. This request, however, must also be denied. The discretion to release a prisoner to home confinement lies solely with the Attorney General."). Further, after a defendant is sentenced to imprisonment by the court, the BOP is solely responsible for determining the defendant's place of incarceration. See 18 U.S.C. §3621(b); 18 U.S.C. §3624(c). See also United States v. Delacruz, 2020 WL 3405723, *4 (M.D. Pa. June 19, 2020) ("[T]he Court is without authority to control the BOP's placement of Defendant—the Court can neither directly assign Defendant to home confinement nor direct the BOP to do so."); United States v. Powell, 2020 WL 2848190, *2 (E.D. Pa. June 2, 2020) ("[T]o the extent that [defendant] seeks to appeal the prison's denial of home confinement, such decision is not reviewable by this Court.") (citing 18 U.S.C. §3621 ("[A] designation of a place of imprisonment ... is not reviewable by any court.")).

[2]Defendant is currently serving a 57-month prison sentence that was imposed by this court on June 15, 2017, after he pled guilty to assault with a weapon while he was incarcerated for other convictions, in violation of 18 U.S.C. §113(a). (Docs. 16 & 32). In particular, the court sentenced the defendant to 57 months' imprisonment, to run consecutively to terms of imprisonment he was serving which were imposed in the Northern District of West Virginia. Defendant was not ordered to be on supervised release since his sentence ran consecutively to his previous prison sentence.

to date. (Doc. 40 at 3-4). Since Biggs has exhausted his BOP administrative remedies, the court will consider the merits of his instant motion for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i).

"The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute." United States v. Schultz, 454 F.Supp.3d 217, 219 (W.D. N.Y. April 15, 2020) (citation omitted). "A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions." Id. (citations omitted).

Biggs argues that his serious chronic medical conditions along with the BOP's alleged inadequate response to the COVID-19 pandemic, constitute "extraordinary and compelling reasons" warranting his reduction in his sentence and release from prison. He also appears to contend that he is not a danger to the public and that a reduction in his sentence is supported by the factors in §3553(a).

The government contends that Biggs' motion should be denied since he has not identified "extraordinary and compelling reasons" for a reduction within the meaning of §3582(c)(1)(A) and the Sentencing Commission's policy statement, and since he poses a significant danger to the public and the statutory sentencing factors under §3553(a) do not weigh in favor of his release.

4

As the court in United States v. Epstein, 2020 WL 2537648, *2 (D.N.J. May 19, 2020), explained:

> Once a federally imposed sentence commences, a district court has limited authority to modify that sentence. Dillon v. United States, 560 U.S. 817, 825 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." (alterations in original) (quoting 18 U.S.C. §3582(b)). One such authority for modifying a sentence is found in the recently-enacted First Step Act, which allows a defendant to be afforded compassionate release for "extraordinary and compelling reasons." 18 U.S.C. §3582(c)(1)(A)(i).
>
> The First Step Act, §3582(c)(1)(A)(i), provides in relevant part:
>
> (c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of

5

imprisonment), after considering the facts set forth in section 3553(a) to the extent that they are applicable, if it finds that –

(i) extraordinary and compelling reasons warrant such a reduction.

Thus, "a defendant seeking a reduction in his sentence under the First Step Act ["FSA"] 'bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release.'" *Id.* (citation omitted).

The government states that the Sentencing Commission's "policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." (Doc. 40 at 15) (citing USSG §1B1.13, cmt. n.1(A)). However, as the court in Epstein, *id.* at *3, pointed out, "the Sentencing Commission had defined th[e] term ["compelling and extraordinary reasons"] as it relates to the BOP's discretion under the previous version of section 3582(c)(1)(A), it has not, however, updated its Policy Statement since the passage of the First Step Act." (citing United States v. Rodriquez, 451 F.Supp.3d 392, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020); *see also* U.S. Sentencing Guidelines Manual ("U.S.S.G."), §1B1.3, Application Note 1 (U.S. Sentencing Comm'n 2018)). In any event, "the Policy Statement provides useful guidance for district courts in assessing a defendant's eligibility for compassionate release, but it 'does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under

6

§3852(c)(1)(A).'" *Id.* (citation omitted). "The Policy Statement provides that a defendant may show extraordinary and compelling reasons for compassionate release based on the medical condition of the defendant, the age of the defendant, the defendant's family circumstances, or for "other reasons." *Id.* (citing U.S.S.G. §1B1.13, Application Note 1).

In the instant case, as in <u>Epstein</u>, *id.* at *3, defendant Biggs seeks compassionate release based on his medical conditions, as such, he "may show extraordinary and compelling reasons for release ... where (1) '[t]he defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory),' or (2) he or she is[:] (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because that of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." (citation omitted).

The court first addresses whether defendant has demonstrated extraordinary and compelling reasons for compassionate release, under the FSA, based on his medical conditions.

"Section 3582(c)(1)(A)(i) permits a federal prisoner to petition a court for compassionate release for 'extraordinary and compelling reasons'", and in general, "'extraordinary' means '[b]eyond what is usual, customary, regular, or common' and a 'compelling need' is a 'need so great that

irreparable harm or injustice would result if it is not met.'" United States v. Ramirez-Ortega, 2020 WL 485356, *3 (E.D. Pa. Aug. 18, 2020) (citations omitted). Although a "general fear of contracting COVID-19 while imprisoned at [the federal prison] does not represent an extraordinary and compelling reason warranting compassionate release", id., if an inmate has recognized medical conditions that would put him at a greater risk to suffer severe complications if he did contract COVID-19, this may qualify as an "extraordinary or compelling reason" warranting his release from prison. See "People Who Are at Higher Risk for Severe Illness," https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/people-at-higher-risk.html.

The government, (Doc. 40 at 20-21), also states that while COVID-19 does not constitute an extraordinary and compelling reason,

> [t]hat does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under §3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, [footnote omitted] that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. USSG §1B1.13, cmt. n.1(A)(ii)(I). But as part of its analysis of the totality of circumstances, the Court should consider whether the inmate is more likely to contract COVID-19 if he or she is released than if he or she remains incarcerated. That will typically depend on the

8

inmate's proposed release plans and whether a known outbreak has occurred at his or her institution.

Biggs, age 41, alleges that he suffers from Hepatitis C and a depressive disorder and he claims to be at risk to the virus based on his conditions.

The government maintains that "[Biggs'] contention does not establish 'extraordinary and compelling reasons' for a sentence reduction under §3582(c)(1)(A)." It points out that "Biggs provides no medical records to support his claim to have these conditions", but it concedes that the "BOP health records ... indicate that Biggs suffers from 'Hepatitis C, chronic w/o mention of hepatic coma, and 'Anxiety disorder.'" (Doc. 40 at 21) (citing Doc. 42 & 42-1 to 42-5). However, the government contends that "[n]either of these ailments are noted as risk factors by the CDC", and that "[e]ven if Biggs had liver disease sufficient to be in that class of persons considered by the CDC to be at risk, Biggs is better served by remaining incarcerated at the USP." The government indicates that the BOP has enacted safety protocols based on the CDC recommendations in order to minimize the risk of spread of COVID-19. The government, (Id. at 22-23), also argues that:

> the BOP – as demonstrated by the health records attached – is providing chronic care for Biggs's conditions, including hepatitis C. Should his hepatitis C result in chronic disease in the future, Biggs has available to him resources at the BOP to meet each and every recommendation outlined in the CDC for those suffering chronic kidney disease, including (1) medication and dietary regimes; (2) constant and readily available medical care; (3) a 30 day supply of medicines; and (4) a full and steady supply of food choices which meet any special

9

dietary requirements. Biggs has not demonstrated that he will be able to so order his life if released from prison as to limit his exposure to COVID-19. Nor has he demonstrated he would have access to medical care and dietary regimen available to him at BOP facilities, as recommended by the CDC, if released by the Court. As such, Biggs has failed to establish an "extraordinary and compelling reason" for a sentence reduction under §3582(c).

No doubt that Biggs suffers from Hepatitis C and he has regular chronic care visits. However, Biggs' medical records show that the prison is effectively treating him for his medical condition and that he is receiving several medications. In particular, Biggs' chronic care medical records indicate that he is being properly treated for his liver condition, as well as his mental condition, at USP Victorville, (see Docs. 42 & 42-1 to 42-5), and that his conditions are controlled by medications, (Doc. 42-1 at 11-12), and stable. Additionally, the BOP records indicate that Biggs' prescription for Remeron for his anxiety disorder and his unspecified episodic mood disorder was increased when he became symptomatic. However, he did not have any suicidal ideation and his thought process and content were appropriate. With respect to his Hepatitis C, he was not "icteric", i.e., not jaundice, his skin color was within normal limits, and he had no complaint of abdominal pain. Also, his lab panel was normal. (Doc. 42-2 at 9-11).

Additionally, although he states that the COVID-19 virus is present at USP Victorville, Biggs does not allege that he was exposed to the virus at the prison. In fact, Bigg's medical records indicate that he was tested for COVID-19 on September 25, 2020, and he was negative for the virus. (Doc.

10

42-2 at 7 & Doc. 42-5 at 16). The number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/. Currently, there are 7 positive cases of COVID-19 among inmates and 7 positive cases among staff at the prison. Also, several inmates and staff who had the virus at the prison have recovered. No deaths from the virus have been reported at the prison. Nor has Biggs controverted with any evidence the substantial steps identified in the government's brief that the BOP is taking to protect the health and safety of both inmates and staff at federal prisons. Since the safety procedures and protocols enacted by the BOP in prisons to protect inmates and staff, including at USP Victorville, are stated in the government's brief, (Doc. 40 at 5-12), and are found in the BOP's websites cited in the brief, they are not repeated herein. *See* BOP website at: www.bop.gov/coronavirus/index.jsp.

As the court in Epstein, 2020 WL 2537648, at *6, concluded, "[m]ere 'speculation concerning possible future conditions does not constitute a 'compelling reason' for release." (citing United States v. Veras, 2020 WL 1675975, at *4 (M.D. Pa. Apr. 6, 2020); *see also* Raia, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Nonetheless, the court will assume for purposes of the instant motion, without deciding, *see* United States v. Kolodesh, ---F.Supp.3d---, 2020 WL

11

5292145, *2 (E.D. Pa. Sept. 4, 2020), that Biggs' chronic Hepatitis C, for which he was unsuccessfully treated with interferon, can be considered a health condition that places him at a higher risk for contracting COVID-19 and for suffering more severe consequences if he does contract the virus. See United States v. Marquez, 2020 WL 6044319, *5 (E.D. Ca. Oct. 13, 2020) ("Several courts have found that Hepatitis C, as a general matter, damages the liver and weakens the immune system, which in turn may establish 'extraordinary and compelling reasons' justifying compassionate release amid the COVID-19 pandemic.") (string citations omitted). The court, id., also noted that the CDC indicates that individuals with liver disease "might be at increased risk for severe illness [from COVID-19]."

Thus, to the extent that Biggs' liver condition, and the risks he faces due to the COVID-19 pandemic, constitute "extraordinary and compelling reasons", the court will consider his compassionate release based on weighing the applicable factors set forth in 18 U.S.C. §3553(a). See United States v. Bayne, 2020 WL 6292827, *1 (W.D. Pa. Oct. 27, 2020) ("Under th[e] standard [for a motion for compassionate release], a medically compromised prisoner's showing of non-speculative risk of exposure to COVID-19 can justify compassionate release, unless the section 3553(a) sentencing factors weigh significantly against that outcome.").

Under the FSA, the court is also required to consider "the factors set forth in section 3553(a) to the extent that they are applicable" Epstein, 2020

WL 2537648, at *3 (citing §3582(c)(1)(A)). As in Epstein, id., the following factors in §3553(a)(1) and (2), apply to the present case:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct.

The undisputed factual background of defendant's offense is detailed in the government's brief, (Doc. 40 at 24-26), as well as in the PSR, (Doc. 20 at 4-6). In particular, as the government summarizes:

> Biggs would pose a danger to public safety if released. This Court should deny a sentence reduction on that basis alone. Biggs has a lengthy criminal history beginning in 1997. PSR p. 6. The defendant has 18 adult criminal convictions, 16 of which had no effect on his criminal history computation. [Doc. 20.] PSR pp. 6 –13. Despite these numerous convictions not being counted, Biggs's criminal history category was a IV. [Doc. 20 at 14.] Biggs committed the instant offense, a violent felony, while incarcerated [at USP Canaan] related to two previous felony convictions including: (1) felon and unlawful user of controlled substances in possession of a firearm; and (2) possession of material used in the manufacture of methamphetamine. PSR ¶¶28 and 44. Biggs's first federal felony conviction is described in the PSR. Biggs and another individual forced two individuals to strip, at gun point, in a town park because they thought the victims were undercover police officers. PSR ¶28. The victims fled, and while running away, there were shots fired in their direction. PSR ¶28. His second federal felony conviction, while having to do with possessing materials for manufacture of methamphetamine, also involved actions dangerous to the public. Biggs is described to have engaged in a high-speed chase

on State Route 220 in Pendleton, West Virginia while attempting to evade the West Virginia State Police. PSR ¶44. When finally apprehended, Biggs was found in possession of several materials used to manufacture methamphetamine. PSR ¶44. In addition to these incidents, Biggs has suffered convictions for violent conduct including Assault (PSR ¶34); Battery (PSR ¶¶27, 30 and 32); and Conspiracy to commit an offense against the State of West Virginia (PSR ¶28) (Biggs and another individual broke into a residence and stole $1000 worth of property). The Battery convictions involved incidents during which Biggs used a baseball bat (1) to attack an individual (PSR ¶30); and (2) to strike a vehicle several times after having run into the parked truck with his own vehicle (PSR ¶32). Biggs 2003 Assault conviction involved the defendant confronting and punching a correctional officer who was attempting to walk away from the defendant. PSR ¶34. This occurred when Biggs came across the victim – a correctional officer at a prison that previously housed the defendant – while the two were patronizing the Doodle's Bar in Shanks, West Virginia. PSR ¶34.

In the present case, as the government details in its brief, (Doc. 40 at 26), "[t]his Court sentenced [Biggs] for a serious prison assault during which Briggs attacked a fellow inmate with a padlock in a sock, causing multiple lacerations to the victim's head, cheek, back and forearms requiring staples and sutures. [Doc. 20] PSR ¶¶5–7. Briggs reported that he assaulted the victim because the victim was a member of a rival gang, Aryan Resistance Militia Security Threat Group. PSR ¶7. Briggs is associated with the Aryan Circle gang. PSR pp. 4 and 15."

Also, even though this court imposed a 57-month consecutive sentence on Biggs for his "gang assault that resulted in significant injuries to his victim", (Id. at 27) (citing Doc. 20, PSR p. 4), which occurred while he was serving a federal prison sentence, as the government points out:

14

While in federal prison, the defendant has incurred several disciplinary incidents resulting in sanctions, including (1) destroy property; (2) phone abuse; (3) being insolent to staff members; (4) disruptive conduct; (5) possession unauthorized item; (5) assault with serious injury (2); possessing intoxicants; (6) fighting with another person; (7) failing to stand count; (8) engaging in group demonstration; (8) assault with life threatening injuries; (9) possession a dangerous weapon (2); (10) being in unauthorized area; (11) assault without serious injury (3); and (12) setting a fire. [Doc. 20 at 13] PSR ¶44.

Thus, in addition to having "a history of methamphetamine; cannabis; cocaine; hallucinogens; and alcohol dependence" (Id. at 27) (citing PSR ¶59), Biggs has a very violent history which has continued during his incarceration. Further, Biggs has not attempted to correct his behavior while in prison and, as the government states, "as of the date of the PSR[,] Biggs had failed to enroll in the BOP RDAP program as recommended by the previous Court." (Id. at 28) (citing PSR ¶59).

In short, the court finds that Biggs' troubling criminal history, his conduct while incarcerated, as well as his underlying conduct involving instant offense, clearly demonstrate that he poses a very grave danger to the community. As such, Biggs has failed to establish that he is not a danger to the community. USSG §1B1.13(2).

Also, Biggs projected release date from prison is August 19, 2022. *See* https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results. The court finds that Biggs should serve the remainder of his sentence that was imposed in this case, and that if he was released from prison, this would not be sufficient time to reflect the seriousness of his offense and it would be

inconsistent with the §3553(a) factors. In particular, the court finds that "the need for [Biggs] to serve the remainder of his sentence still exists to 'reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense'", and thus, "the section 3553(a) factors weigh against [his] release to home confinement." Epstein, 2020 WL 2537648, at *3 (citing §3553(a)).

Finally, since the court is denying Biggs' motion for compassionate release, his motion to appoint counsel with respect to his instant motion, (Doc. 39), see U.S. v. Olden, 296 Fed.Appx. 671, 674 (10th Cir. 2008) (defendant has "no constitutional right to assistance of counsel in pursuing his §3582 motion"), will be denied.

III. **CONCLUSION**

Defendant Biggs' Motion for Compassionate Release and for Immediate Release to Home Confinement, under §3582(c)(1)(A)(i), related to the COVID-19 pandemic and his medical conditions, **(Doc. 35)**, will be **DENIED ON ITS MERITS**. Further, insofar as Biggs is seeking this court to compel the BOP to find that he is eligible for home confinement designation under the CARES Act, the court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court. Finally, Biggs'

motion for appointment of counsel, **(Doc. 39)**, will be **DENIED**. An appropriate order will follow.

s/ *Malachy E. Mannion*<br>**MALACHY E. MANNION**<br>**United States District Judge**

**Dated: November 18, 2020**
16-338-01